Díaz, Plaintiff and Appellee, v. Arkadia Sugar Company, Defendant and Appellant.

Appeal from the District Court of Humacao in an Action for Damages.

No. 1863.—Decided June 28, 1919.

Damages—Employee—Employer—Limitation—Notice—Employers' Liability Act.—When an action is based on section 1803 of the Civil Code and not on the Employers' Liability Act of 1901, an employee who sues his employer for damages is not obliged to notify the employer of the accident within the period of thirty days fixed by the said act, nor is the action barred by limitation because the complaint was filed more than six months after the accident, which is the limitation fixed by the said act.

Id.—Id.—Id.—Scaffolds and Railings.—Act No. 30 of 1913 provides that any person who intends to construct or repair a building shall construct a scaffold, platform, or other similar contrivance for the benefit and safety of the carpenters, masons, or other employees which "shall be, if possible, at least two feet wide and shall have a safety railing around the same." The words "if possible" refer to the width of the scaffold. The statute clearly provides that the scaffold shall be surrounded by a railing.

Id.—Id.—Id.—Defect—Notice.—When the defect consists in the employer's having failed to comply with any of the obligations of the act it is unnecessary to allege and prove that the employee notified the employer of the existence of the defect in order to conclude that the employer had knowledge of it, for it is to be presumed that the employer necessarily had knowledge of his own acts.

Id.—Id.—Id.—Assumption of Risk.—According to the weight of authority, the theory of assumption of risk does not apply to a case where the employer fails to comply with a duty imposed by law.

The facts are stated in the opinion.

*Mr. Luis Llorens Torres* for the appellant.

*Messrs. Francisco González* and *M. Tous Soto* for the appellee.

Mr. Justice del Toro delivered the opinion of the court.

Inocencio Díaz brought an action in the District Court of Humacao against the Arkadia Sugar Company, a corporation organized under the laws of this Island, for the recovery of $2,000 as damages. The complaint substantially alleges that on December 8, 1915, the plaintiff was employed by the defendant corporation as assistant to the carpenters in the construction of a house connected with the defendant's factory, working under the orders of its foreman on a scaffold

which was used for that purpose, and that in attempting to
adjust a girder over the scaffold he lost his balance and,
because the defendant did not have a fit scaffold, fell to the
ground from a considerable height, breaking one arm and
receiving other serious injuries which necessitated medical
assistance for a period of five months and left him unable
to work in the future. That the accident was due to the neg-
ligence of the defendant in not furnishing its employees with
a scaffold in the conditions required by law, with a solid
platform and railing. That the defendant had knowledge of
the dangerous condition of the scaffold, and that the plaintiff
called the defendant's attention to it on several occasions.

The defendant pleaded that the complaint did not state
facts sufficient to constitute a cause of action. A day having
been set for a hearing on the demurrer, only the plaintiff
appeared and the court, being of the opinion that the com-
plaint was sufficient, overruled the defendant's demurrer.
The defendant then answered the complaint, denying each
and all of its allegations, and later amended its answer by
adding as new matter that the plaintiff never worked for
the defendant, or for any of its employees, by order of the
defendant; that the scaffold on which the defendant's em-
ployees were working was in perfect condition and was pro-
vided with a railing, platform and everything necessary for
the safety of the employees, and that the accident to the
plaintiff was due to his own negligence and not to the negli-
gence of the defendant who had nothing to do with the work
being done by the plaintiff on the building connected with
the defendant's factory.

The issue being thus joined, the case was brought to
trial and both parties introduced evidence. The district court
finally gave judgment for the plaintiff and in its opinion
said:

"From a careful study of the evidence examined this court ar-
rives at the conclusion that all the allegations of the complaint have
been proved; that the injuries suffered by the plaintiff are of such

a serious nature that the plaintiff, formerly a young and strong man who could do any kind of heavy work, is in such a condition and so badly injured that he will never be able to work again, for he has lost the entire use of his right arm and the partial use of his left arm, his legs being also seriously affected. Indeed, the plaintiff will have to live the life of a beggar if the court does not sustain his claim against the defendant corporation, for, having no means and being unable to work, he would have to ask charity of others for his subsistence. The negligence of the defendant is negligence *per se,* considering that it had not complied with the provisions of Act No. 30, of March 13, 1913, regulating the construction of scaffolds.''

The defendant corporation appealed to this court. The plaintiff-appellee appeared at the hearing on the appeal but filed no brief.

The appellant maintains that the complaint does not state facts sufficient to constitute a cause of action because it does not show that the plaintiff gave notice of the time, place and cause of the injury to the employer within thirty days after the injury was received, as required by the ''Act in relation to the liability of employers for injuries sustained by their employees while in their service'' approved March 1, 1902; and it also maintains that as the complaint was filed more than six months after the accident occurred, his action is barred by the said act.

The foregoing contentions are based on the theory that this action is governed by the act cited. That act was in full force when the accident occurred and when the complaint was filed, but was it the only law upon which the plaintiff could base his action?

In our judgment it was not, for the general provision contained in section 1803 of the Revised Civil Code was also in force and has been in force in Porto Rico since 1889 for the reason that section 1803 of the Revised Civil Code is a repetition of section 1902 of the Spanish Civil Code.

In 1908 this court, by Mr. Justice Figueras, said:

''It would seem from the complaint that the purpose was to base

the action for damages upon the act approved March 1, 1901 (1902), in relation to the liability of employers to their employees for injuries sustained while in their service. But upon reading the prayer of the complaint this inference disappears, inasmuch as the amount claimed as damages is fixed at 10,000 *pesos* while the aforesaid act only authorizes the plaintiff in such case to claim a sum not to exceed $2,000. (See section 2 of the act, or section 323 of the Revised Statutes.)

"And this inference from the complaint is so natural that the trial judge assumes that it was only through error that 10,000 *pesos* could have been claimed as damages, and he considers and analyzes the claim as if covered by the said act and as if only $2,000 were claimed.

"The appellant in his brief in this Supreme Court clearly says that his complaint is based on sections 1803 *et seq.* of the Civil Code, and as no incompatibility exists between the two laws and the Revised Civil Code is subsequent to the Employers' Liability Act, let us consider and decide this case in accordance with the code under which the appellant and plaintiff, Román Natal, now raises the question." *Natal* v. *Bartolomey et al.,* 14 P. R. R. 474, 476.

The opinion of this court is sustained by precedents and by American jurisprudence. Under the heading "Concurrent rights of action under the statutes and at common law" in his "Commentaries on the Law of Master and Servant," second edition, Vol. 5, p. 5144, par. 1667, C. B. Labatt, summarizing the authorities, says: "A servant is not precluded by the provisions of any of these statutes (referring to the employer's liability acts) from recovering damages in a common-law action, if the circumstances are such as would have enabled him to maintain an action before it was passed. And the fact that the plaintiff might have maintained the action at common law does not deprive him of the benefits of the statute."

This being so and it not appearing that the plaintiff based his action on the Employer's Liability Act of 1902, the appellant's contention has no merit, apart from the fact that it seems to have been made for the first time before this court. And having arrived at the foregoing conclusion, we

shall proceed to study the case in the light of section 1803 of the Civil Code, which provides that a person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.

What was the cause of the accident? The appellant alleges that it was due to the fact that the scaffold had no railing and the district court so found. At the trial the plaintiff testified under oath as follows:

"That on December 8, 1915, he was working in the Arkadia Sugar Central as assistant carpenter and fell from a badly constructed scaffold. That these scaffolds were badly constructed because the scaffold consisted of a plank without a railing or anything else, the plank being only eight inches wide.—This scaffold was fastened at both ends, but there was no railing around it; nothing; no railing; no hand-rail; no ropes on the sides; nothing.—That the accident occurred while he was working on that scaffold; while he was adjusting a girder it slipped on the opposite side and as it was at his feet it made him lose his footing and, not finding any way of escape, he had to fall with it from a height of thirty to thirty-five feet."

Had the scaffold a railing or not? The evidence was contradictory. The witnesses for the plaintiff testified that it had not while those for the defendant testified that it had. The court adjusted the conflict in favor of the plaintiff and there being no showing that the court was influenced by passion, prejudice or partiality or that it committed manifest error, its decision must prevail.

Was it the defendant's duty to construct the railing? It was. That duty is imposed upon it by Act No. 30 of 1913. The defendant maintains that in accordance with the wording of that act it should have been shown that the construction of the railing was "possible." We do not agree. The pertinent part of the act reads as follows: "All scaffolds, platforms or other similar appliances shall be, if possible, at least two feet wide and shall have a safety railing around the

same." The words "if possible" refer to the width of the scaffold. As to the railing, every scaffold must have a railing around it.

The appellant also maintains that there are allegations in the complaint which were not proved by the evidence and points out the 7th, as follows: "That plaintiff called the defendant's attention to the dangerous condition of the said scaffold on several occasions."

Indeed, the evidence is deficient on this point, but in our judgment in order to conclude that the defendant had knowledge of the defect it is unnecessary to allege and prove that the plaintiff had given notice of it. By virtue of the law, as we have seen, it was the duty of the defendant to construct the railing. It did not do so. What else need be proved? The defendant necessarily had knowledge of its own acts.

And, finally, the appellant maintains that it appears from the complaint itself and from the plaintiff's own evidence that in any event the plaintiff had knowledge of the defect and therefore assumed the risk that might result therefrom, consequently he has no right to set up a claim against the employer, according to the jurisprudence.

We admit that the complaint and the evidence show that the plaintiff had knowledge of the defect and was aware of the risk, and also that the doctrine of the assumption of risk has been recognized and applied by this court. *Cartagena* v. *Mayagüez Light and Ice Co.*, 21 P. R. R. 167, 172, and cases cited.

But there is a state of facts here which prevents the application of that doctrine, to wit: that the negligence of the employer was due to his failure to comply with a duty expressly imposed upon him by law, and in that case he can not plead the defense of the assumption of the risk by his employee.

Labatt's Master and Servant, Vol. 5, p. 5059 *et seq.*, treats this question as follows:

"Although the defenses based upon the doctrine of the contractual assumption of risk and upon the maxim *Volenti non fit injuria* are theoretically distinct, it is impossible to preserve that distinction in discussing the American cases where the cause of action rests upon the master's breach of a specific statutory duty. In many cases the court expressly says that assumption of risk is based on an implied contract; and in other cases the court specifically refers to the defense founded upon the maxim; but a very frequent form of statement is that the defense of assumption of risk is based upon the maxim, or, in some cases, even that it is based on contract and also upon the maxim; and from examination of a large number of cases involving the master's breach of a specific statutory duty it would seem that the courts, whether referring the defense to contract or to the maxim, have but one defense in view, and no case has been found which suggests that there are two distinct defenses, one of which might be open to the master, while the other was not. * * * ''

"There is great conflict of opinion in the American decisions as to whether or not the continuance in the service with knowledge of the fact that the master has not complied with the statutory requirements is a defense to an action based upon such failure on the part of the master. The greater weight of authority (and this doctrine appears to be a growing one) is that a servant does not assume the risk of the master's breach of a statutory duty.

"Cases of this character generally hold that the doctrine of assumption of risk is based upon an implied contract; and consequently it would be against public policy to permit the master to contract against the effects of a violation of the statute. It is a necessary inference from this view that a statutory duty imposes obligations upon the master superior to those imposed by the common law; this view is expressly taken in at least one case but cases are not lacking which hold to the contrary. The more rational view would seem to be that to permit a servant to assume such a risk would have the practical result of nullifying the beneficial effect of the statute, for it would be possible for the master merely to notify the servant of his failure to perform the statutory duty in order to avoid any liability to the servant for such failure.''

The decisions cited by the author in support of the doctrine enunciated, which in our judgment is correct, are very numerous and interesting.

"The other view is,'' Labatt goes on to say, "that, if the servant

has knowledge of the master's breach of a statutory duty, he may assume the risks of such breach the same as he would assume any other breach of duty on the part of the master.

"For the most part the cases taking this view assert that the doctrine of assumption of risk is not based upon contract, but is based upon the maxim *Volenti non fit injuria;* and in consequence thereof the question of public policy mentioned above is not involved. The fundamental principle underlying cases of this character is that, in the absence of an express provision taking away such defense, the courts cannot read such a provision into a statute, as the statutes, being in derogation of the common law, must receive a strict construction."

For all of the foregoing we are of the opinion that the judgment should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf and Hutchison concurred.

Mr. Justice Aldrey dissented.